UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED

NOV 1 9 2009

CLERK

| | | |
|---|---|---|
| CAMERON G. BLAIR, | ) | CIV. 08-4095 RHB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| H.C.M.T.I. (Prison Healthcare), | ) | |
| DEPT. OF CORRECTIONS; | ) | |
| DOUGLAS WEBER, Warden, South | ) | ORDER GRANTING |
| Dakota State Prison; P.A. ZIKE, | ) | SUMMARY JUDGMENT |
| Physician Assistant, South Dakota | ) | |
| State Prison; P.J. SEVERSON, Nurse, | ) | |
| South Dakota State Prison; JULIE | ) | |
| SPURRELL, Head of Healthcare | ) | |
| Services, South Dakota State Prison; | ) | |
| and DR. WHITE, Doctor, Central | ) | |
| Plains Eye Clinic, | ) | |
| | ) | |
| Defendants. | ) | |

## NATURE AND PROCEDURE OF THE CASE

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 seeking damages

arising out the alleged violation of his constitutional rights. Plaintiff alleges that

while an inmate with the South Dakota Department of Corrections, he was

prescribed the medication TobraDex despite his complaints and fears that it was

causing more damage to his eyes.

Upon his incarceration in December of 2002, plaintiff presented with a history

of recurrent viral eye infections. Defendants' Statement of Material Facts (DSMF),

¶¶ 12, 14. These infections were "routinely treated with a steroidal eye drop, such as TobraDex." DSMF, ¶ 13. Plaintiff indicated that he had previously been prescribed TobraDex for his eye infections and had success with the medication. DSMF, ¶¶ 14-15. In June of 2003, plaintiff was treated for an eye infection. He was prescribed TobraDex and was instructed to use the medication as needed. DSMF, ¶ 17. Plaintiff received treatment for an eye infection again in January of 2004. Again, plaintiff was prescribed TobraDex to be used as needed. DSMF, ¶ 19. In September of 2004, another prescription for TobraDex was given and, again, it was to be used as needed. DSMF, ¶ 20. Prescriptions for TobraDex were also given to treat plaintiff's eye infections in March, May, August, and September of 2005. DSMF, ¶¶ 21-23.

In September of 2005, plaintiff was examined by Dr. White. ¶ 24. Dr. White discontinued plaintiff's prescription of TobraDex during his initial consultation. DSMF, ¶ 24. On December 7, 2005, Dr. White performed eye surgery on plaintiff. DSMF, ¶ 25. On that same day, he prescribed TobraDex. DSMF, ¶ 26.

In February of 2006, plaintiff again sought treatment for an eye infection and reported his previous use and success with the medication TobraDex. DSMF, ¶ 27. Though prescribing the medication yet again for plaintiff, medical staff reminded plaintiff that TobraDex was not to be used on a long-term basis. DSMF, ¶ 27. Plaintiff was examined and treated again in June and November of 2006. DSMF, ¶ 30.

Since April of 2007, plaintiff has been treated by an optometrist "outside" the Department of Corrections. DSMF, ¶ 31. There is no indication by this doctor that plaintiff has suffered from adverse effects as a result of the use of TobraDex. DSMF, ¶ 31. In fact, this optometrist has also prescribed TobraDex to treat plaintiff's eye infections. DSMF, ¶¶ 31-32.

On February 9, 2006, plaintiff filed a grievance with prison officials alleging that the physician's assistant had over-prescribed TobraDex and that the prolonged use of TobraDex had damaged his eyes. DSMF, ¶ 36. The grievance was denied by prison officials and plaintiff filed a second grievance alleging the same violations. DSMF, ¶¶ 37-38. Plaintiff was then informed that the prison officials would continue to abide by the doctor's orders. DSMF, ¶ 39

Plaintiff then filed this complaint on June 25, 2008. After been dismissed initially, and upon reconsideration, plaintiff supplemented his complaint and was allowed to proceed. On January 22, 2009, the Court ordered that the complaint be served upon defendants. Defendants filed an answer on February 10, 2009, and asserted that they were immune from suit under the Eleventh Amendemnt and the doctrine of qualified immunity. As a result, the Court stayed discovery and ordered defendants to move for summary judgment on the issue of immunity. Defendants have now filed their motion and that matter is ripe for disposition.

## DISCUSSION

Before addressing the merits of the motion for summary judgment, the Court notes that plaintiff has not responded to defendants' motion for summary judgment or defendants' statement of material facts. Pursuant to Local Rule 56.1(D), "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Accordingly, the Court deems defendants' statement of material facts as admitted by plaintiff as he did not respond to defendants' statement of material facts.

## A.    Individual Defendants

In plaintiff's complaint, under the section designated for relief sought, plaintiff states "I would like each defendant held accountable in both their official and individual capacity." Complaint, p. 3. As a result, the Court shall address claims against the individual defendants in both their official capacities and their individual capacities.

### 1.    Official Capacity Claims

First, with regard to the claims against the individual defendants in their official capacities, the Court finds that the claims must fail under the Eleventh Amendment. "[T]he Eleventh Amendment bars suit against the state or state officials acting in their official capacity." Morstad v. Department of Corrections and

Rehabilitation, 147 F.3d 741, 743 (8th Cir. 1998). Furthermore, in their official capacities the individual defendants are not "persons" for purposes of § 1983 unless plaintiff is seeking prospective relief. See Murphy v. State of Ark, 127 F.3d 750, 754 (8th Cir. 1997). In this case, plaintiff is not seeking prospective relief, but monetary damages. As a result, the individual defendants in their official capacities do not constitute "persons" under § 1983 who are amenable to suit. Therefore, these claims must be dismissed.

### 2.    Individual Capacity Claims

Defendants argue that they are protected from suit under the doctrine of qualified immunity. "To determine whether an official is entitled to qualified immunity, [the Court must] ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." Vaughn v. Green County, Ark., 438 F.3d 845, 850 (8th Cir. 2006).

In the case *sub judice*, plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when defendants prescribed medication for his eye condition that he believes has caused further damage. "It is well established that the Eighth Amendment prohibition on cruel and unusual

5

punishment extends to protect prisoners from deliberate indifference to serious medical needs." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "To state a claim of inadequate medical treatment for § 1983 purposes, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006) (quoting Estelle, 429 U.S. at 106, 97 S. Ct. 285.) "'Although medical negligence does not violate the [E]ighth [A]mendment ... medical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference.'" McRaven v. Sanders, 577 F.3d 974, 983 (8th Cir. 2009) (quoting Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001)).

The facts, viewed in a light most favorable to plaintiff, show that plaintiff presented with a history of eye infections. He reported his previous use of, and success with, TobraDex. There is no evidence or indication in the record that plaintiff suffered adverse effects from the use of TobraDex. At most, it can be said that the prescribing physicians and physician's assistants were negligent in prescribing TobraDex as often as plaintiff requested and trusting him to administer the medication himself. It cannot be said, however, that defendants acted with deliberate indifference or that they knew that TobraDex posed a substantial risk of harm to plaintiff and continued to provide him with the medication. This conclusion

is supported by the fact that plaintiff's current optometrist, who is "outside" the Department of Corrections, has recently prescribed TobraDex to treat plaintiff's eye infection. DSMF, ¶ 32. As a result, the Court finds that defendants' actions were reasonable and did not violate plaintiff's constitutional rights.

## B.  HCMTI

Plaintiff also names HCMTI as a defendant in this action. HCMTI provides "administrative and medical care support to the South Dakota Department of Health in caring for inmates in the custody of the South Dakota Department of Corrections." DSMF, ¶ 3. Defendants argue that HCMTI should be dismissed because plaintiff has not alleged personal involvement with the alleged deprivation of his constitutional rights, nor has he alleged a policy or custom practiced by HCMTI that resulted in the deprivation of his constitutional rights. Plaintiff contends that HCMTI should be held accountable because it "set[s] the guidelines and policies for [its] staff and employees and provide[s] support, discipline and supervision. [It is] liable for the actions of [its] employees." Docket #95, p. 7.

"[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975 (8th Cir. 1993). The Eighth Circuit has held that "[t]he proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." Id. Furthermore, HCMTI "'cannot be

held liable under § 1983 on a respondeat superior theory.'" Id. (quoting Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)).  As a result, based upon the pertinent law, plaintiff's theory that HCMTI is liable for the actions of its employees under § 1983 is not viable under the law of this circuit.  Furthermore, as plaintiff has not alleged the existence of an unconstitutional policy or custom, plaintiff's claim against HCMTI shall be dismissed.

## C.      Department of Corrections

Plaintiff also seeks to hold the South Dakota Department of Corrections liable. As stated previously, it is well settled that "the Eleventh Amendment bars suit against the state or state officials acting in their official capacity."  Morstad v. Department of Corrections and Rehabilitation, 147 F.3d 741, 743 (8th Cir. 1998).  As the Department of Corrections is an agency of South Dakota, a suit against it would be the same as a suit against the state.  Hence, immunity under the Eleventh Amendment extends to the Department of Corrections and bars this action.

## CONCLUSION

Based upon the foregoing discussion, the Court finds that plaintiff may not sue the individual defendants in their official capacities, or the Department of Corrections, as such actions are barred by immunity under the Eleventh Amendment.  Additionally, the individual defendants are immune from suit under the doctrine of qualified immunity as plaintiff has not shown that their actions

8

violated his constitutional rights. Finally, the Court finds that HCMTI cannot be held liable under a theory of respondeat superior. Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Docket #76) is granted.

Dated this _19th_ day of November, 2009.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE